864 So.2d 963 (2003)
Hershel MILES, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01134-COA.
Court of Appeals of Mississippi.
November 4, 2003.
Rehearing Denied January 27, 2004.
*964 David L. Walker, Batesville, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., BRIDGES and IRVING, JJ.
IRVING, J., for the Court.
¶ 1. Hershel Miles, Jr. brings this direct appeal from his conviction of uttering a forgery and petit larceny in the Circuit Court of Panola County where he was sentenced, as a habitual offender, to a term of life without parole in the custody of the Mississippi Department of Corrections. Feeling aggrieved from that court's decision, Miles appeals and presents the following issues: (1) whether the trial court erred in permitting him to have only six peremptory challenges instead of twelve peremptory challenges, (2) whether the trial court erred in denying his proposed peremptory instruction, D-1, (3) whether the trial court erred in granting the State's jury instructions C-13 and C-14, (4) whether the verdict of the jury is against the overwhelming weight of the evidence, and (5) whether the sentence of life without parole violates the Eighth Amendment of the United States Constitution as cruel and unusual punishment.
¶ 2. Ascertaining no error, we affirm.

FACTS
¶ 3. On September 1, 2001, Ann Weldon and her son Chris returned to their Panola County home from a doctor's appointment. Upon their return, they discovered that their front door had been damaged. Upon further investigation of their home, they found that several items were missing from inside of the house, including a VCR, a Sony Playstation, a Nintendo 64 console, and Nintendo games. Weldon soon after contacted the Panola County Sheriff's Office.
¶ 4. A few days later, on September 4, 2001, Allen Brassell was returning home from a visit to his grandmother's house. Nathan Harris, a friend of Brassell, was also riding in the car. During their return, Hershel Miles, an acquaintance of Brassell, flagged the two men down and requested that they take him to Union Planters Bank to cash a check. The men pulled into the drive-through of the bank where Miles conducted his business from the backseat. Miles gave a check to the bank teller, Doris Pittman. Upon viewing the check, Pittman, who knew Mrs. Weldon, observed that the check possessed the signature of Alvin Weldon, Mrs. Weldon's deceased husband. Being suspicious, Pittman called Mrs. Weldon and inquired about the check. Mrs. Weldon told Pittman that she had not written such a check or authorized anyone else to do so. Pittman called the police and stalled to allow the police time to arrive. The police subsequently *965 drove up, and Miles fled from the scene but was later arrested.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. The Proper Number of Peremptory Challenges

¶ 5. Miles first argues that the trial court erred when, during jury selection, it permitted him only six peremptory challenges instead of twelve. He points out that Mississippi Code Annotated section 99-17-3 allows a defendant twelve peremptory challenges in capital cases. He also submits that Rule 10.01 of the Uniform Rules of Circuit and County Court mandate that he be allowed twelve peremptory challenges. Miles then explains that he was charged in this case as a habitual offender and was thus subject to life imprisonment without parole, thus making the charged crime capital in nature. Miles contends that his argument, regarding the capital nature of the charge, is further buttressed by the fact that he did receive a life sentence.
¶ 6. The same arguments that Miles asserts here were articulated by the accused in Osborne v. State, 404 So.2d 545 (Miss.1981). In that case, Osborne, the defendant, was convicted of carrying a concealed weapon after his conviction of two prior felonies. Id. at 545. Because of his past felony convictions, Osborne was sentenced under the habitual offender statute, Mississippi Code Annotated section 99-19-83 (Rev.2000). Id. at 546. On appeal, Osborne contended that because the habitual offender statute subjected him to punishment of life imprisonment, he was charged with a capital offense, and thus, was entitled under Mississippi Code Annotated section 99-17-3 (Rev.2000) to twelve peremptory challenges to the jury. Id. In response to Osborne's argument, our supreme court stated the following:
[I]n the present case the principal offense of carrying a concealed weapon after a felony conviction is not a capital crime and not an offense which entitles the defendant to twelve peremptory challenges. The jury only determines the guilt of the accused on the principal offense and does not consider the prior convictions which bring into consideration the life sentence under the habitual offenders statute. The trial judge, in a separate hearing, determines the applicability of the habitual offenders statute and the sentencing. Thus, the special challenges to the jury allowed a defendant charged with a capital crime are not necessitated when the principal offense is noncapital. Thus, this assignment is without merit.
Id.
¶ 7. In the case sub judice, a jury found Miles guilty of both forgery and petit larceny, neither of which are capital offenses. See Miss.Code Ann. § 1-3-4 (Rev.1998), § 97-17-43, § 9-7-21-33, § 97-21-59 (Rev.2000). Therefore, because Miles's offenses were noncapital, the statutory and rules provisions which provide extra peremptory challenges to the venire in capital cases were inapplicable. Miles was entitled only to the regular number of six peremptory challenges.
¶ 8. Finally, Miles concedes that the Osborne decision is direct authority against his argument that he should have been allowed twelve instead of six peremptory challenges. In doing so, however, he asserts that Osborne is a pre-rules decision and that we should reconsider Osborne because it is in conflict with the provisions of Rule 10.01 of the Uniform Rules of Circuit and County Court Practice. It is sufficient to say that we as an intermediate appellate court do not have the authority *966 to overrule a decision of our supreme court. Nevertheless, we are not persuaded by Miles's argument. While the stated rule uses the word "case," there is no doubt that the word "case," as used in the rule, refers only to cases where the punishment for the underlying crimewithout the benefit of any enhancementmay be death or life imprisonment. It does not refer to cases where the punishment is elevated to a life sentence only because the defendant is a habitual offender. Consequently, we find no merit in this issue.

2. The Sufficiency of the Evidence
¶ 9. Miles next asserts that the trial court erred when it denied his peremptory instruction. He explains that the only evidence presented against him by the State was circumstantial and that which was presented does not support his convictions.
¶ 10. "The standard of review for a denial of a directed verdict, peremptory instruction and a JNOV are identical." Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003) (citing Coleman v. State, 697 So.2d 777, 787 (Miss.1997)). A motion for a JNOV, as well as a motion for a directed verdict and a request for a peremptory instruction, challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair-minded jurors could only find the accused not guilty." Hawthorne, 835 So.2d at 21(¶ 31) (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)). Since a motion for a JNOV, a motion for a directed verdict, and a request for a peremptory instruction all require consideration of the evidence before the court when the motion or request was made, we review the trial court's ruling on the last occasion the challenge was made in the trial court. Id. (citing Wetz, 503 So.2d at 807-08).
¶ 11. We consider the evidence offered by the State in support of Miles's convictions. The victim, Weldon, testified that her home was broken into, that several items were stolen, and that the cumulative value of the items stolen was under $250. Weldon further testified that she became aware that her checks were missing when Pittman called her at home on September 4, 2001, a few days after the burglary. She also testified that she had not written nor authorized anyone to write Miles a check. She verified that the check, allegedly bearing her husband's signature, was dated September 1, 2001, but that her husband, Alvin Weldon, died December 24, 2000.
¶ 12. Brassell testified that he saw Miles writing on a check while they were at Union Planters in Brassell's car. He also testified that Miles told him to pull off from the bank when the police arrived and that Miles subsequently exited the car and fled the scene. Harris testified that he did not see Miles write the check out but saw him put a check, pen, and Miles's identification in the bank drawer. He also stated that Miles told Brassell to pull off when the police arrived and soon after ran from the scene. Pittman identified Miles as the man attempting to cash the check, verified the check which was given to her by Miles, and confirmed that Mr. Weldon's name was signed on the check.
¶ 13. Miles testified that he had gotten the check from a guy named Al on September 1, 2001, after he sold Al a motor. He asserted that he did not know Al's full name, exactly where he lived, or how to contact him.
¶ 14. Our supreme court has consistently held that unexplained possession of recently stolen property is prima facie, although *967 by no means conclusive, evidence of burglary. Brooks v. State, 695 So.2d 593, 594 (Miss.1997) (citing Weaver v. State, 481 So.2d 832, 834 (Miss.1985); Huddleston v. State, 220 Miss. 292, 70 So.2d 621 (1954)). Moreover, the supreme court has also determined that:
[T]he inference of participation in the crime drawn from possession of the fruits of the crime is to be judged like any other inference, that is, on the strength of that inference in the light of the facts of each particular case. The circumstances of possession and the presence or absence of evidence of participation in the crime other than mere possession must be viewed.
Shields v. State, 702 So.2d 380, 382 (Miss. 1997). The following circumstances are to be considered in such cases as the one presently before this Court:
1. The temporal proximity of the possession to the crime to be inferred;
2. The number or percentage of the fruits of the crime possessed;
3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.
Id. at 383.
¶ 15. The first factor, the temporal proximity of possession, is neutral to Miles and the State. Ms. Weldon's house was burglarized on September 1, 2001, and Miles attempted to cash the check on September 4, 2001. Conceivably, Miles, if he did commit the burglary, could have held onto the checks until then or the check may have exchanged hands during this time. The second factor, the number or percentage of the fruits of the crime possessed, weighs in favor of Miles. From the various items which were stolen, Miles had in his possession only one check and none of the other items were recovered. The third factor, the nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge, weighs in favor of the State. While Miles's presentation of his driver's license at the bank teller's window was not an effort to conceal his identity, he fled the scene when the police arrived at the bank. Evidence of unexplained recent flight is admissible as consciousness of guilt. Miller v. State, 801 So.2d 799, 803 (¶ 18) (Miss.Ct.App.2001) (citing Fuselier v. State, 702 So.2d 388(¶ 4) (Miss.1997)). Finally, the fourth factor, whether an explanation is given and whether that explanation is plausible or demonstrably false, lends strength to the inference of guilt. Although Miles explained that he got the check for payment of a motor which he sold to a man known as Al, he could not identify him, could not tell where he lived, and could not tell how to contact him. Moreover, Miles's explanation of why he fled the scene as the police arrived at the bank was contradicted by the men transporting him to the bank. Miles explained that Brassell and Harris came to his house to buy marijuana, and because Brassell and Harris were short on money, he got them to take him to the bank. He further explained that he fled the scene at the bank because he and Brassell had marijuana on them. Both Brassell and Harris denied these allegations.
¶ 16. Based upon the evidence submitted to it, the jury found Miles guilty of petit larceny and uttering a forgery. Considering the strength of all inferences and circumstances of possession by Miles of Weldon's check, together with his attempt to negotiate the check at Union Planters Bank, we find that the jury was fully warranted in concluding that Miles was guilty *968 of uttering a forged instrument and petit larceny. Therefore, Miles's motion for a peremptory instruction and a JNOV was properly denied by the trial court.

3. The Grant of Certain Jury Instructions
¶ 17. Miles next argues that the trial court erred in granting a jury instruction which permitted the jury to draw an inference of guilt from his possession of recently stolen property. According to Miles, the evidence presented at trial was insufficient to support an inference of his guilt simply because he was found in possession of the check. He also submits that the absence of an evidentiary basis made it error to permit an instruction articulating the elements of forgery. Miles makes no argument that the instruction is substantively incorrect but rather reasserts that the evidence does not support his larceny and forgery convictions. As we discussed earlier, the evidence was sufficient to support Miles's conviction on the charges. We therefore find no merit in his contentions concerning the jury instructions.

4. Weight of the Evidence
¶ 18. Although Miles indicates in the caption to one of his issues that the verdict was against the overwhelming weight of the evidence, the argument which he makes in support of that issue goes to the sufficiency and not the weight of the evidence.
¶ 19. As distinguished from a motion for directed verdict or a JNOV, a motion for a new trial asks to vacate the judgment on grounds related to the weight, not sufficiency, of the evidence. Smith v. State, 802 So.2d 82, 85-86(¶ 11) (Miss.2001). Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:
"[This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.
Todd v. State, 806 So.2d 1086, 1090(¶ 11) (Miss.2001).
¶ 20. Considering the evidence previously described in this opinion and its substantial weight against Miles, we are not persuaded that the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. The facts and inferences in the case sub judice strongly point towards Miles's guilt. Consequently, we find that the trial court did not abuse its discretion denying Miles's motion for a new trial.

5. Constitutionality of Miles's Sentence
¶ 21. Miles's final assignment of error submits that his sentence of life without parole violates the Eighth Amendment's proscription against cruel and unusual punishment. He proclaims that the trial court erred when it did not invoke the proportionality analysis in considering the proper sentence to be given since, in Miles's view, his sentence is disproportionate to the crime of which he was convicted.
¶ 22. Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute. Hoops v. State, 681 So.2d 521, 537-38 (Miss.1996) (citing Reynolds v. State, 585 *969 So.2d 753, 756 (Miss.1991)). "Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." Id. at 538 (citing Fleming v. State, 604 So.2d 280, 302 (Miss. 1992)). Proportionality review of sentences is required, however, in particular situations where "a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality.'" Id.
¶ 23. After being convicted of petit larceny and uttering a forgery, Miles was sentenced to life imprisonment without parole pursuant to the habitual offender statute, Mississippi Code Annotated section 99-19-83. This statute reads:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code Ann. § 99-19-83 (Rev.2000).
¶ 24. The evidentiary basis for Miles's sentencing as a habitual offender was offered through the testimony of Zoyle Jones, the director of sentence management services for the department of corrections in the State of Tennessee. Jones testified that Miles had been convicted of the following crimes and received the sentences and served time as indicated: (1) the sale of cocaine for which he received a three-year sentence and served one year, five months and thirteen days; (2) burglary of a non-habitation for which he received a two-year sentence and served one year, six months and six days; and (3) robbery for which he received a four-year sentence and served one year, six months and one day. The sentences for these convictions were ordered to be served concurrently. Additionally, Jones testified that Miles also had been convicted of the following crimes and received the sentences and served time as indicated: (1) burglary for which he received a four-year sentence and served two years, six months and twenty-one days, and (2) aggravated burglary for which he received an eight-year sentence and served three years, eight months, and eighteen days. These final two convictions were served concurrently, but consecutively to the three previously mentioned convictions. Also submitted to the court were authenticated documents from the State of Kansas indicating that Miles had been convicted of burglary and sentenced to twenty-seven months in prison. Of this sentence, Miles served a minimum of twenty-two months.
¶ 25. As previously observed, Miles was sentenced to life in prison without the possibility of parole. Without a doubt, this is a severe sentence, perhaps the second most severe sentence available, second only to a death sentence. However, Miles was handed the sentence because he is a recidivist who committed the felony of uttering a forgery. "[Miles's] sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record." Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 1190, 155 L.Ed.2d 108 (2003). There is no merit to Miles's argument that his sentence is violative of the Eighth Amendment's ban on cruel and unusual punishment.
*970 ¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF UTTERING A FORGERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.