GRIFFIS, J.,
for the Court.
¶ 1. Carl Hobbs was convicted of the crime of grand larceny. Judge Ashley W. Hines sentenced him to serve a term of ten years in the custody of the Mississippi Department of Corrections, with seven years suspended on the condition that he serve five years supervised probation. Hobbs was further ordered to pay $3,338 restitution, $300 attorneys fees, $264 court costs, and $20 bond fee. Hobbs raises two issues on appeal: (1) whether the verdict was against the overwhelming weight of the evidence, and (2) whether mere possession of money gives rise to an inference of grand larceny. We find that the evidence was insufficient to warrant a conviction, and we reverse and render.
FACTS
¶ 2. On August 25, 2003, John Streeter went to the Union Planters Bank in Green-ville where he cashed checks totaling $3,338.04. Streeter obtained thirty-three one hundred dollar bills. Streeter then placed the envelope of money inside his van, beside his parking brake and placed his Bible on top to conceal it. Streeter then drove home. When he arrived, he went inside and left the money in the van with the windows rolled down and the doors unlocked.
¶ 3. Several of Streeter’s family members and Hobbs, who was an acquaintance from his church, were inside his home. According to the evidence presented, Hobbs asked Streeter if he could borrow thirteen dollars to get his car fixed. Streeter told him he did not have the money, because he had already paid bills. Hobbs then called his sister to ask her for the money. Later, Hobbs asked Streeter to drive him home, and Streeter agreed.
¶ 4. Streeter told Hobbs that he had to stop by Greenville Lumber Company first. Hobbs said he, too, needed to go there to check on some lumber. They arrived at Greenville Lumber Company and parked at the back, by the service entrance. Three Greenville Lumber Company employees were standing in the parking lot. Streeter and Hobbs both got out of the van at the same time. Streeter went inside to check on his lumber, and Hobbs stayed outside to check on his lumber. The van doors remained unlocked, and the windows were rolled down. Streeter testified that he did not see Hobbs or anyone else go to his van during this time. Hobbs then began to walk home, which was down the street from Greenville Lumber Company. Streeter emerged from the store and was told by the employees that Hobbs had left. Streeter saw him about three blocks away and asked him what happened. Hobbs told him to go on, and he could walk home from there.
¶ 5. Streeter then returned home. Once again, Streeter left his van windows down and his doors unlocked. Streeter remembered that he left his money in the van, so he went to retrieve it. Streeter then discovered that the money was missing.
¶ 6. Streeter immediately drove his van back to where he saw Hobbs. Streeter found Hobbs in the neighborhood where he last saw him. Streeter got out of his car and chased Hobbs with a knife, demanding his money. Hobbs denied stealing Streeter’s money and showed Streeter that his wallet was empty. Streeter testified all of this happened within ten min *760 utes of leaving Greenville Lumber. Streeter threw the knife down and told Hobbs to come with him to his house. Hobbs refused; he feared that Streeter would kill him. Streeter then told Hobbs he was going to take his Bible to the police for fingerprints. The police, however, did not find Hobbs’s fingerprints on the Bible.
¶ 7. Hobbs testified that he then went to where he had stashed his own money. He said he had saved money for at least a month to buy a keyboard. About 2:30 p.m., Hobbs bought a keyboard for $548 from Barenis Music Store. Hobbs paid with six one hundred dollar bills. Hobbs had two additional one hundred dollar bills on him. Hobbs later paid a total of one hundred dollars to Lee Edward Stevenson, his landlord. Hobbs did not make this payment with a one hundred dollar bill. Hobbs owed Stevenson more money but did not pay it to him that afternoon.
¶ 8. The next day, Streeter went to Hobbs’s house and found the keyboard box in the backyard. Streeter took the box to the music store to ask if Hobbs had bought it. Streeter then told Hobbs that he was going to take him to the police. Hobbs told him he would go on his own.
¶ 9. The police arrested Hobbs for grand larceny. Hobbs gave a statement in which he said that he did not steal the money. Hobbs told the police that he played piano for three different churches that paid him about $175 in cash every Sunday, and he also gave music lessons for cash. Hobbs gave the names of the churches and the music student. Hobbs told the police that he had two stashes of money that he had saved — one at a house on East Alexander and one in the washing machine at his home on Ninth Street. The police never searched his home for the rest of the money. The police never took- statements from the three employees at Greenville Lumber Company. The police never contacted the churches or Hobbs’s music student in order to corroborate or refute Hobbs’s explanation. The money was never found.
STANDARD OF REVIEW
¶ 10. Requests for a directed verdict and motions for JNOV challenge the sufficiency of the evidence. In reviewing a sufficiency of the evidence claim, the Court considers the evidence in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 844(¶ 16) (Miss.2005). Usually, if any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will uphold the verdict. Id. However, where the case is built on purely circumstantial evidence, as here, we must go further and determine:
whether a rational fact finder might reasonably conclude that the evidence excludes every reasonable hypothesis inconsistent with guilt. Put another way, “[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of innocence ... then a reasonable jury must necessarily entertain a reasonable doubt.”
Shields v. State, 702 So.2d 380, 382 (Miss. 1997) (citations omitted) (quoting Clark v. Procunier, 755 F.2d 394, 396 (5th Cir. 1985)).
ANALYSIS

I. Was Hobbs entitled to a directed verdict or a JNOV?

II. Does the mere possession of money give rise to an inference of grand larceny?
¶ 11. Because both issues go to the sufficiency of the evidence, we consider these issues together.
*761 ¶ 12. Hobbs contends that the evidence was insufficient to sustain a grand larceny conviction. In particular, Hobbs argues he had no money immediately after the alleged larceny, the money he later spent did not belong to Streeter, and the evidence was consistent with reasonable theories of innocence. The State counters there was sufficient circumstantial evidence to sustain the conviction. To support this conclusion, the State argues that the evidence showed that Hobbs had no money before he rode with Streeter, and Hobbs had at least eight hundred dollar bills approximately two and a half hours after he rode with Streeter.
¶ 13. A person is guilty of grand larceny when he feloniously takes and carries away another’s personal property, worth $500 or more. Miss.Code Ann. § 97-17-41 (Supp.2005).
¶ 14. In most of the cases where circumstantial evidence has been held sufficient to support a grand larceny conviction, the fact that the property belonged to the victim was either not disputed, or there was an in-court identification that the property belonged to the victim. Brooks v. State, 695 So.2d 593, 594 (Miss. 1997); Smith v. State, 278 So.2d 408, 409-10 (Miss.1973); Coggins v. State, 234 Miss. 369, 373, 106 So.2d 388, 389 (1958); Haney v. State, 199 Miss. 568, 574-76, 24 So.2d 778, 778-79 (1946); Ray v. State, 864 So.2d 1031, 1033 (¶¶ 3-5) (Miss Ct.App.2004); Miles v. State, 864 So.2d 963, 966(¶ 12) (Miss.Ct.App.2003); Jones v. State, 819 So.2d 558, 560 (¶¶4-8) (Miss.Ct.App.2002).
¶ 15. Here, the ownership of the money was disputed. The stolen money was never found on Hobbs, let alone brought in for an in-court identification. On this basis alone, this case is distinguishable from most every circumstantial evidence case in which the conviction was upheld. The peculiarity is that this case deals with cash. Cash, by its very nature, is fungible and more difficult to identify as belonging to a particular person than a stolen chainsaw or shotgun. We focus our analysis on those circumstantial evidence cases that involved stolen cash.
¶ 16. In Cates v. State, 823 So.2d 1229 (Miss.Ct.App.2002), the stolen property was never found, and this Court upheld the sufficiency of the circumstantial evidence. Money and rings were stolen from a safe inside the bedroom closet of Beatrice Holmes. Id. at 1231(¶ 4). There was no sign of forced entry into the home or the safe. Id. The only three people with a key to the house were Holmes, her sister Ms. Windburn, and Robert Dean Cates, Holmes’s son. Id. at (¶ 5). These three individuals were also the only ones who knew the combination to the safe. Id. Holmes and Windburn were out of town during the crime. Id. at (¶ 4). This left Cates as the only person who had the opportunity to commit the larceny. He admitted to being in the home on the day in question and then leaving to gamble at the casinos in Vicksburg, even though he admitted to not having worked in quite a while. Id. at (¶ 6). It is unclear whether this Court used the correct standard of review. At the beginning of the analysis, this Court stated it would use the regular sufficiency of the evidence standard of review. Id. at 1231-32(¶ 10). The opinion then concludes that the State met its burden of proving the case beyond a reasonable doubt. Id. at 1232(¶ 11). The opinion then states that the correct standard of review was whether all reasonable hypotheses have been excluded, but still concluded that the case met the regular sufficiency of the evidence standard of review. Id. at 1232(¶ 12).
¶ 17. In this case and in Cates, the stolen money was never recovered. However, the similarities end there. There *762 was no evidence that Hobbs was ever alone in the van. Cates admitted to being alone in the house on the day of the burglary. Cates was the only one with the opportunity to steal the money. The same cannot be said here. Streeter rode around town with the money in his van. It was parked, unlocked and with the windows down. The van was unattended on at least three occasions. There are at least three other individuals, the Greenville Lumber employees, who were near the van and had the opportunity to take the money. There was evidence that Cates knew the money and rings were in the safe. Id. at 1232 (¶ 11). There was absolutely no evidence here that Hobbs even knew there was money in Streeter’s van. In fact, just before they left, Streeter told Hobbs he did not have any money on him, because he already had paid his bills. We find Cates does not govern the outcome of this case.
¶ 18. Next, we consider Haney v. State, 199 Miss. 568, 574, 24 So.2d 778, 778 (1946). Houston Haney was accused of stealing $440 out of Roberta Jefferson’s purse while she was asleep when they were riding together. Id. at 575, 24 So.2d at 778. The stolen cash was made up of twenty-one twenty dollar bills and two ten dollar bills. Id. at 574-75, 24 So.2d at 778. On one of the twenty dollar bills, Jefferson had written the initials of her husband, “C.H.J.,” because this was one of the last things he gave her before he went off to war, where he was eventually killed. Id. at 575-76, 24 So.2d at 778-79. She kept this bill as a souvenir. Id., 24 So.2d at 778-79. Haney was found with sixteen twenty dollar bills on him, among which was the specially marked bill, along with other currency, all totaling $400.65. Id. at 576, 24 So.2d at 779. Mrs. Haney testified that the specially marked twenty dollar bill came out of her own purse and that she gave it to her husband shortly before his arrest. Id. However, Jefferson denied ever giving Mrs. Haney the specially marked bill. Id. Given these facts, the court upheld the conviction. Id. at 577, 24 So.2d at 779.
¶ 19. Haney is distinguishable from this case. Haney was found with the money on him, and the victim was able to positively identify the money as belonging to her. Id. at 575-76, 24 So.2d at 778-79. Here, ten minutes after the alleged theft, Hobbs did not have any money on him. He was seen with eight one hundred dollar bills two and a half hours later. However, there was never a positive identification that this was Streeter’s money.
¶ 20. Furthermore, Haney’s explanation of the money was refuted by the victim. Id. at 576, 24 So.2d at 779. Hobbs’s explanation for the money was never even investigated by the police nor the prosecution, let alone refuted by a single State’s witness. Haney simply does not apply to this case.
¶ 21. In Williamson v. State, 229 Miss. 305, 314-15, 90 So.2d 657, 661 (1956), the court held that the circumstantial evidence was insufficient. Thomas Williamson was convicted of grand larceny for stealing $140 out of Will Underwood’s wallet. Id. at 307, 90 So.2d at 657. Williamson, Underwood and two others were at a mill late one night. Id. at 307-08, 90 So.2d at 658. At one point, Underwood took out his wallet, put it on the table, and bet Williamson fifty dollars as to what time it was. Id. at 310, 90 So.2d at 659. When Williamson refused to bet, Underwood placed his wallet back in his pocket, which he zipped shut. Id. Later on, Underwood became inebriated to the point that he could not walk without assistance. Id. at 308, 90 So.2d at 658. Williamson helped him walk around the room and tried to sober him. Id. at 310, 90 So.2d at 659. Underwood *763 testified Williamson drove him away from the mill. Id. at 310-11, 90 So.2d at 659. Underwood woke up the next day out in the woods. Id. at 311, 90 So.2d at 659. There were several people around in the woods. Id. at 312, 90 So.2d at 660. Underwood then discovered his money missing. Id. at 314, 90 So.2d at 661. He accused Williamson of spiking his drink and taking his wallet when he was helping him walk around the room. Id. at 309-12, 90 So.2d at 658-60.
¶ 22. The supreme court reversed the conviction. Id. at 315, 90 So.2d at 661. The court ruled that there were several reasonable hypotheses consistent with innocence. Id. at 314-15, 90 So.2d at 661. As for one such hypothesis, the court explained, “In fact, it is a reasonable hypothesis that [Underwood] may have lost his billfold during the nearly .twelve hours thereafter during which he” was so inebriated he could not remember anything. Id. at 314, 90 So.2d at 661. There was also evidence that others had the opportunity to take Underwood’s money. Id. at 307-12, 90 So.2d at 657-60.
¶ 23. The facts in Williamson are similar to the case at bar. In each case, the police did not find the missing money on either defendant. In both cases, the evidence indicated other people had the opportunity to take the money. Additionally, both cases present a question of whether the money ever existed in the first place. Like Williamson, there are other reasonable hypothesis as to what happened to the money. Because the money was never found, we cannot rule out the possibility that Streeter lost the money. Because there were other people with access to the van, a second reasonable hypothesis is that someone else took the money. These are at least two reasonable hypotheses inconsistent with Hobbs’s guilt that the evidence fails to exclude.
¶ 24. Frankly, there is even less evidence against Hobbs than there was against Williamson. For example, Williamson was told there was at least fifty dollars in Underwood’s billfold; however, no evidence revealed Hobbs even knew there was money in the van. Id. at 310, 90 So.2d at 659.
¶ 25. Given our standard of review, we are compelled to reverse for lack of sufficient evidence. Where the case is built on purely circumstantial evidence, “[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of innocence ... then a reasonable jury must necessarily entertain a reasonable doubt.” Clark v. Procurer, 755 F.2d 394, 396 (5th Cir.1985). Here, the evidence gives nearly equal support to the views that Streeter lost his money, or someone else stole it, as it does that Hobbs stole it. The $800 Hobbs used to purchase the keyboard was never identified as belonging to Streeter. Hobbs’s house was never searched for the alleged remaining funds. Hobbs’s explanation was never investigated. Instead, it was ignored by the State as being “irrelevant.” The Greenville Lumber employees were never interviewed as witnesses nor as suspects.
¶ 26. The State rested its entire case on the fact that Hobbs asked for money before riding with Streeter and had money two and a half hours later, even though it was undisputed that Hobbs had no money ten minutes after the ride. This was not sufficient evidence to sustain the conviction.
CONCLUSION
¶ 27. We find that the evidence failed to exclude every reasonable hypothesis consistent with innocence. Therefore, the evidence offered was insufficient to sustain a *764 grand larceny conviction. We reverse and render Hobbs’s conviction.
Z¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.